UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| MUHAMMED MUHAMMED, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | No. 3:20-cv-00602 |
| | ) | Judge Trauger |
| BYRON PONDS, et al., | ) | |
| Defendants. | ) | |

## MEMORANDUM

Muhammed Muhammed, an inmate at Trousdale Turner Correctional Center in Hartsville, Tennessee, filed a pro se civil rights complaint under 42 U.S.C. § 1983 (Doc. No. 1), a supplement to the complaint (Doc. No. 5), and an application to proceed as a pauper (Doc. No. 2). This action is before the court for an initial review under the Prison Litigation Reform Act and the in forma pauperis statute.

**I.  Application to Proceed as a Pauper**

The court may authorize an inmate to file a civil suit without prepaying the filing fee. 28 U.S.C. § 1915(a). Because the plaintiff's application to proceed as a pauper reflects that he cannot pay the filing fee in advance, the application (Doc. No. 2) will be granted. The $350.00 filing fee will be assessed as directed in the accompanying order. 28 U.S.C. § 1915(b)(1).

**II.  Initial Review**

The court must dismiss this action if it is frivolous or malicious, fails to state a claim, or seeks monetary relief against a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); 42 U.S.C. § 1997e(c)(1). The court also must liberally construe pro se pleadings

and hold them to "less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).

A. **Factual Allegations**

The plaintiff's allegations primarily concern his inmate classification at Trousdale Turner. Based on the plaintiff's factual allegations and the exhibits attached to the complaint, the court has established the following summary for the purpose of conducting an initial review.

In September 2019, the plaintiff was put on "close custody" status after pleading guilty to an "assault on staff" disciplinary offense. (Doc. No. 1 at 6.) The plaintiff was to go to "medium custody" after six months if he did not have an intervening disciplinary infraction. (*Id.*) The plaintiff did not have an infraction before his next reclassification hearing in May 2020, so TDOC Contract Monitor Chris Brun and Warden Raymond Byrd signed papers removing the plaintiff from close custody and authorizing him to return to general population. (*Id.*)

On May 29, 2020, Unit Manager Thames falsely charged the plaintiff with assault on staff. (*Id.* at 6, 9.) The plaintiff was taken to segregation, which violated a TDOC policy that inmates should be placed on "pending investigation" status before being charged. (*Id.*) The plaintiff had a disciplinary hearing on June 8, the timing of which allegedly violated his due process rights. (*Id.* at 9, 16–17.) Thames did not appear at the hearing. (*Id.* at 9.) The disciplinary board found the plaintiff not guilty based on a review of the prison's video footage. (*Id.* at 10, 16–17.)

The plaintiff remained on segregation until June 10, when he was placed on "pending investigation" status by Assistant Warden Byron Ponds. (*Id.* at 10; Doc. No. 5 at 1.) On June 11, the plaintiff filed a grievance with Grievance Chairperson Elisabeta Lopez. (Doc. No. 1 at 5.)

On June 16, Disciplinary Hearing Officer Huntley told the plaintiff that he spoke with Assistant Warden Ponds, and Ponds told Huntley that the plaintiff was returning to close custody

status because Warden Byrd did not want him "back on the compound." (*Id.* at 10.) On June 23, Warden Byrd, Assistant Warden Ponds, and Assistant Warden Vinnie Vantel had Classification Coordinator Holmes reclassify the plaintiff to close custody status. (*Id.*; Doc. No. 5 at 2.) Holmes specifically told the plaintiff that he qualified for medium custody status, but that Ponds instructed her to "use a code to override [the plaintiff] to close custody" based on "the last classification and write up." (Doc. No. 1 at 11–12.) Sergeant Dickey also told the plaintiff that inmates found not guilty of assaulting him have been allowed "back on the compound." (Doc. No. 5 at 2.)

While on close custody status, the plaintiff is housed in the same pod as "protective custody" inmates, where he is unable to use the telephone or watch television and faces the following conditions: "no electricity, cold/late food, unsanitary showers, poor security, low staff." (Doc. No. 1 at 7.) The plaintiff seems to allege that this improper classification negatively affects his mental health, as he takes medication for diagnosed PTSD, depression, anxiety, and paranoia. (*Id.*) Inmates on close custody also lose parole eligibility, and the plaintiff alleges that Warden Byrd wanted him on this status, rather than some "transfer" status, to harm the plaintiff's ability to make parole at his next scheduled parole hearing in October. (*Id.* at 10–11.)

The plaintiff sues Warden Byrd, Assistant Warden Ponds, Assistant Warden Vantel, and Grievance Chairperson Lopez. (*Id.* at 1–3; Doc. No. 5 at 1.) He requests reclassification to general population with high priority, all "credits from 6-29-20 to present," and all "state pay." (Doc. No. 1 at 13.) He also requests "restitution paid out" for the defendants' actions. (*Id.* at 13–14.)

**B.** **Legal Standard**

To determine if a complaint passes initial review under the applicable statutes, the court applies the Rule 12(b)(6) standard. *Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010). The court therefore accepts "all well-pleaded allegations in the complaint as true, [and] 'consider[s] the

factual allegations in [the] complaint to determine if they plausibly suggest an entitlement to relief.'" *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009)). An assumption of truth does not extend to allegations that consist of legal conclusions or "'naked assertion[s]' devoid of 'further factual enhancement.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)).

### C. Analysis

"There are two elements to a § 1983 claim. First, a plaintiff must allege that a defendant acted under color of state law. Second, a plaintiff must allege that the defendant's conduct deprived the plaintiff of rights secured under federal law." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations omitted).

#### 1. Dismissal of Defendant Lopez

As an initial matter, the plaintiff fails to state a claim against Grievance Chairperson Lopez. The only factual allegation regarding Lopez is that she received a grievance from the plaintiff related to the facts of this lawsuit. The plaintiff, therefore, is presumably asserting that Lopez either mishandled or failed to take appropriate action in response to his grievance. But "there is no inherent constitutional right to an effective prison grievance procedure," *Argue v. Hofmeyer*, 80 F. App'x 427, 430 (6th Cir. 2003) (collecting cases), and "the denial of a grievance or the failure to act upon the filing of a grievance is insufficient to establish liability under § 1983." *Johnson v. Aramark*, 482 F. App'x 992, 993 (6th Cir. 2012) (citing *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999)). Accordingly, Lopez will be dismissed as a party.

#### 2. Violation of TDOC Policy

Next, the plaintiff asserts that Trousdale Turner staff violated TDOC policy before and after his disciplinary hearing on June 8, 2020. Specifically, the plaintiff alleges that he should have

4

Case 3:20-cv-00602   Document 6   Filed 12/08/20   Page 4 of 13 PageID #: 41

been placed on "pending investigation" status before being charged on May 29, instead of being taken to segregation. And after the hearing, the plaintiff asserts that Trousdale Turner staff violated a TDOC policy against "double jeopardy" by reclassifying him to close custody status despite the disciplinary board's finding of not guilty. (Doc. No. 1 at 8, 12; Doc. No. 5 at 1.) However, inmates cannot state a Section 1983 claim based solely on the failure to follow prison policies. *See Grinter v. Knight*, 532 F.3d 567, 574 (6th Cir. 2008) (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)) ("Failing to follow proper procedures is insufficient to establish an infringement of a liberty interest."). Thus, to the extent that the plaintiff's claims are premised on the failure to follow policy, they will be denied.

### 3. Due Process

The plaintiff's primary complaint is that prison staff violated his due process rights at the disciplinary hearing, and by placing him on close custody status following the hearing despite being found not guilty. As an initial matter, the plaintiff fails to state a claim based on the process afforded him at the hearing itself because he "was found not guilty." *See Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *2 (6th Cir. Mar. 31, 2017) (citing *Sandin v. Conner*, 515 U.S. 472, 477–78 (1995)) ("[B]ecause Hursey was found not guilty, the misconduct proceedings did not implicate a protected liberty interest."). The plaintiff's concern, therefore, is not with the disciplinary board that found him not guilty, but with the reclassification to close custody following that outcome.

The Fourteenth Amendment provides that prisoners "may not be deprived of life, liberty, or property without due process of law." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974) (citations omitted). To state a procedural due process claim, the plaintiff must show that (1) he had a protected liberty or property interest; (2) he was deprived of that interest; and (3) the state did not

5

afford him adequate procedural rights prior to depriving him of that interest. *Janinski v. Tyler*, 729 F.3d 531, 541 (6th Cir. 2013) (citing *Women's Med. Prof'l Corp. v. Baird*, 438 F.3d 595, 611 (6th Cir. 2006)). The first prong of this claim is a threshold requirement. *See Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Thus, "the question of what process is due is relevant only if the inmate establishes a constitutionally protected interest." *Pickelhaupt v. Jackson*, 364 F. App'x 221, 224 (6th Cir. 2010) (citing *Wikinson*, 545 U.S. at 224).

Prisoners have a narrower set of protected interests than individuals who are not incarcerated. *Wolff*, 418 U.S. at 556. For instance, "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum v. Fano*, 427 U.S. 215, 225 (1976)). A liberty interest may arise, however, in avoiding conditions of confinement that "impose[] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 223 (quoting *Sandin*, 515 U.S. at 484.

Here, the plaintiff alleges that he has been on close custody status since June 23, 2020. Since that time, the plaintiff has been unable to use the telephone or watch television and has experienced "no electricity, cold/late food, unsanitary showers, poor security, [and] low staff." (Doc. No. 1 at 7.) This status also makes the plaintiff ineligible for parole consideration. For two reasons, however, these are not the type of "extreme circumstances" considered "atypical and significant" for the purpose of a due process claim. *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (quoting *Harden-Bey v. Rutter*, 524 F.3d 789, 795 (6th Cir. 2008)).

First, at the time of the plaintiff's last filing, he had been on close custody for about seven weeks. (Doc. No. 5 at 2 (June 23 reclassification date); *id.* at 4 (August 10 signature date).) To "implicate due process considerations," a prisoner's confinement in more restrictive conditions

6

Case 3:20-cv-00602   Document 6   Filed 12/08/20   Page 6 of 13 PageID #: 43

typically must be "prolonged or indefinite." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Wilkinson*, 545 U.S. at 224). The Sixth Circuit has held that periods of confinement longer than seven weeks did not establish a protected liberty interest. *See id.* (69 days); *Powell v. Washington*, 720 F. App'x 222, 227 (6th Cir. 2017) (6 months); *McMann v. Gundy*, 39 F. App'x 208, 210 (6th Cir. 2002) (5 months); *but see Harden-Bey*, 524 F.3d at 792–93 (finding that 3 years without a definite end-point may be "atypical and significant"). The plaintiff also does not allege that he is being denied periodic review of his status. *See Patton v. Hall*, No. 18-5235, 2018 WL 7569342, at *1 (6th Cir. Aug. 7, 2018) (finding no liberty interest where inmate "had only been in administrative segregation for eight months and he failed to allege that he is not receiving the required reviews of his status").

Second, the alleged conditions themselves are not sufficiently restrictive to implicate a liberty interest. *See Wilkerson*, 545 U.S. at 223–24 (finding liberty interest where inmate was prohibited from "almost all human contact," subjected to 24-hour constant light, and limited to 1 hour of exercise per day in a "small indoor room"). As to the plaintiff's parole eligibility, prisoners do not have a protectible liberty interest in the mere possibility of parole. *See Crump v. Lafler*, 657 F.3d 393, 405 (6th Cir. 2011) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979)) ("That the state holds out the possibility of parole provides no more than a mere hope that the benefit will be obtained."). And "a grant of parole in Tennessee is wholly discretionary." *Bradley v. Evans*, No. 98-5861, 2000 WL 1277229, at *8 (6th Cir. Aug. 23, 2000) (citing *Meachem*, 427 U.S. at 229 n.8); *see also Williams v. Lindamood*, 526 F. App'x 559, 563 (6th Cir. 2013) (rejecting due process claim of Tennessee prisoner "disqualified for parole due to placement").

In sum, the plaintiff's alleged conditions are not "atypical and significant" such that he passes the threshold issue of establishing a protected liberty interest. The plaintiff, therefore, fails to state a due process claim based on his close custody status classification.

### 4. Retaliation

The plaintiff's allegations regarding his placement on close custody, however, do state a colorable retaliation claim. To state a First Amendment retaliation claim, a prisoner must allege that: (1) he engaged in protected conduct; (2) he suffered an adverse action "that would deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) "the adverse action was motivated at least in part by [his] protected conduct." *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018) (quoting *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

Here, the plaintiff alleges that, after the disciplinary board found him not guilty of assaulting a staff member, Warden Byrd did not want him "back on the compound." (Doc. No. 1 at 10.) According to the plaintiff, Byrd wanted him on close custody status at that point to hurt his parole eligibility. Byrd, Assistant Warden Ponds, and Assistant Warden and Vantel then forced a classification coordinator to "do a[n] override" and place the plaintiff on close custody status despite qualifying for medium custody. (Doc. No. 5 at 2.) Liberally construing these allegations in the plaintiff's favor, he essentially asserts that Byrd, Ponds, and Vantel retaliated against him for obtaining a not guilty disciplinary finding by unjustifiably placing him on close custody.

This liberally construed assertion states a claim. First, a prisoner maintaining his innocence at a disciplinary hearing is protected conduct. *See Throneberry v. Havenor*, No. 2:19-cv-264, 2020 WL 240993, at *8 (W.D. Mich. Jan. 16, 2020) ("Plaintiff's statement to Defendant Johnston that Plaintiff would not plead guilty to the Lawry misconduct is protected conduct."). Second, the plaintiff suffered a sufficiently adverse action through the more restrictive conditions on close

8

custody status. *See Hill*, 630 F.3d at 474 (citing *King v. Zamiara*, 150 F. App'x 485, 494 (6th Cir. 2005)) ("[A]ctions that result in more restrictions and fewer privileges for prisoners are considered adverse."). And third, liberally construed, the plaintiff alleges that his close custody classification is causally connected to his protected activity. *See LaFountain v. Harry*, 716 F.3d 944, 949 (6th Cir. 2013) (finding prisoner's allegation of "causal[] connection" sufficient to satisfy the third element for the purpose of initial screening under the PLRA).

Accordingly, the plaintiff will be permitted to proceed with a retaliation claim against Warden Byrd, Assistant Warden Ponds, and Assistant Warden Vantel.

### 5. Equal Protection

The plaintiff next asserts an equal protection claim. (Doc. No. 1 at 6.) The Equal Protection Clause is "essentially a direction that all persons similarly situated should be treated alike." *EJS Props., LLC v. City of Toledo*, 698 F.3d 845, 864 (6th Cir. 2012) (quoting *City of Cleburne v. Cleburne Living Ctr.*, 476 U.S. 432, 439 (1985)). It "protects against invidious discrimination among similarly-situated individuals or implicating fundamental rights." *Bishawi v. Ne. Ohio Corr. Ctr.*, 628 F. App'x 339, 344 (6th Cir. 2014) (citing *Ctr. for Bio-Ethical Reform v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011)).

Here, the only allegation raising potential equal protection concerns is that other inmates found not guilty of assaulting a prison official have been allowed "back on the compound." (Doc. No 5 at 2.) But this allegation does not "involve the denial of a fundamental right, because a prisoner does not have a constitutional right to be placed in a specific security classification." *Harbin-Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005) (citing *Moody v. Daggett*, 427 U.S. 78, 88 n.9 (1976)). And the plaintiff does not allege that he was targeted for differential treatment based on his membership in a protected class. *See Katz v. Vill. of Beverly Hills*, 677 F. App'x 232,

9

237 (6th Cir. 2017) (quoting *Henry v. Metro. Sewer Dist.*, 922 F.2d 332, 341 (6th Cir. 1990)) ("To state a claim under the Equal Protection Clause, a § 1983 plaintiff must allege that a state actor intentionally discriminated against the plaintiff because of membership in a protected class."). Accordingly, the plaintiff fails to state an equal protection claim.

### 6. Conditions of Confinement

The plaintiff also asserts a claim of constitutionally inadequate conditions of confinement on close custody status. (Doc. No. 1 at 7.) The Eighth Amendment protects convicted inmates from the "unnecessary and wanton infliction of pain," *Hope v. Pelzer*, 536 U.S. 730, 737 (2002) (citation omitted), which imposes a duty on prison officials to "provide humane conditions of confinement." *Farmer v. Brennan*, 511 U.S. 825, 832–33 (1994) (citations omitted). "An Eighth Amendment conditions of confinement claim [] contains both an objective and a subjective component." *Richmond v. Settles*, 450 F. App'x 448, 455 (6th Cir. 2011) (citing *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). "The objective component requires the plaintiff to demonstrate that he has been subjected to specific deprivations that are so serious that they deny him 'the minimal civilized measure of life's necessities.'" *Id.* (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). "The subjective component," meanwhile, "requires the plaintiff to demonstrate that the prison officials acted wantonly, with deliberate indifference to the plaintiff's serious needs." *Id.* (citing *Farmer*, 511 U.S. at 834).

Here, the plaintiff fails to satisfy the objective component. He alleges that he is unable to use the telephone or watch television and experiences "no electricity, cold/late food, unsanitary showers, poor security, [and] low staff." (Doc. No. 1 at 7.) Although these conditions are undoubtedly unpleasant, the plaintiff does not specifically allege that they caused him to be

10

Case 3:20-cv-00602 Document 6 Filed 12/08/20 Page 10 of 13 PageID #: 47

"deprived of an identifiable human need." *Richmond*, 450 F. App'x at 455 (citing *Wilson*, 501 U.S. at 304). Thus, the plaintiff fails to state a claim on this basis.

### 7.     Mental Health Care

The plaintiff also alleges that he is a "mental health patient" with diagnosed PTSD, depression, anxiety, and paranoia, and that he takes medication to treat these diagnoses. (Doc. No. 1 at 7.) To the extent that he is attempting to assert a claim for inadequate mental health care, however, it will be denied.

A prisoner's Eighth Amendment right to be free from deliberate indifference to serious medical needs extends to "psychiatric needs." *Richmond v. Huq*, 885 F.3d 928, 937 (6th Cir. 2018) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). Such a claim has "an objective and a subjective component." *Id.* at 937–38 (footnote omitted) (citing *Clark-Murphy v. Foreback*, 439 F.3d 280, 292 (6th Cir. 2006)). "To satisfy the objective component, the plaintiff must allege that the medical need at issue is 'sufficiently serious.'" *Comstock*, 273 F.3d at 702–03 (quoting *Farmer*, 511 U.S. at 834). "To satisfy the subjective component, the plaintiff must allege facts which, if true, would show that the official being sued subjectively perceived facts from which to infer substantial risk to the prisoner, that he did in fact draw the inference, and that he then disregarded that risk." *Id.* at 703 (citing *Farmer*, 511 U.S. at 837).

Here, the plaintiff has not satisfied either component. As to the objective component, the Sixth Circuit has held that "a prisoner's 'psychological needs may constitute serious medical needs, especially when they result in suicidal tendencies.'" *Id.* (quoting *Horn v. Madison Cnty. Fiscal Ct.*, 22 F.3d 653, 660 (6th Cir. 1994)). Thus, although the plaintiff alleges that he has diagnosed mental health conditions that require treatment with medication, Sixth Circuit precedent seems to require that prisoners allege some level of suicidal tendencies or self-harm to satisfy the

11

Case 3:20-cv-00602   Document 6   Filed 12/08/20   Page 11 of 13 PageID #: 48

objective component in this context. *See Huq*, 885 F.3d at 938–39 (concluding that a plaintiff who previously attempted suicide, received psychiatric medication, and inflicted a serious burn wound on herself satisfied the objective component). Based on this precedent, the plaintiff has not sufficiently alleged that he has a serious psychiatric need.

The plaintiff also does not satisfy the subjective component. He does not allege that he has been denied his mental health medication while on close custody, and he does not specifically allege that any particular prison official—including the named defendants—has denied him psychiatric treatment. The plaintiff, therefore, fails to state a claim for denial of adequate mental health care.

### 8. Defamation of Character

Finally, the plaintiff asserts a state-law claim of defamation based on two incidents: the false allegation of assault on staff made by Unit Manager Thames, and the improper close custody classification required by Warden Byrd, Assistant Warden Ponds, and Assistant Warden Vantel. (Doc. No. 1 at 7–8.) In Tennessee, an actionable defamation claim requires an "injury to one's reputation for good character with the public." *Montgomery v. Whidbee*, 446 F. Supp. 3d 306, 319 (M.D. Tenn. 2020) (quoting *Davis v. The Tennessean*, 83 S.W.3d 125, 130 (Tenn. Ct. App. 2001)). Filing disciplinary charges against a prisoner and altering his custody status affect, at most, the prisoner's reputation within the prison, not the public. *See id.* The plaintiff "simply fails to state a nonfrivolous claim of defamation" on this basis. *Id.* (citing *Ali v. Moore*, 984 S.W.2d 224, 229 (Tenn. Ct. App. 1998)).

## III. Conclusion

For these reasons, the court concludes that the plaintiff has stated an arguably non-frivolous retaliation claim against Warden Byrd, Assistant Warden Ponds, and Assistant Warden Vantel.

This claim will be referred to the Magistrate Judge for further proceedings consistent with the accompanying order. All other claims and defendants will be dismissed.

_____
ALETA A. TRAUGER
United States District Judge